IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER ) )  Plaintiff, ) )  v. ) UNITED STATES DEPARTMENT OF JUSTICE ) )  Defendant. ) | ) ) ) ) ) ) ) ) ) ) ) No. 1:15-cv-01955-TSC |

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

Pursuant to Federal Rule of Civil Procedure 54(d) and 5 U.S.C. § 552(a)(4)(E)(i), Plaintiff Electronic Privacy Information Center ("EPIC") respectfully moves for an award of attorney's fees and costs reasonably incurred in the above-captioned matter. EPIC submits the accompanying memorandum of points and authorities, with attached exhibits, in support of this motion.

April 4, 2016                               Respectfully Submitted,

MARC ROTENBERG (DC Bar #422825)
EPIC Executive Director

ALAN JAY BUTLER (DC Bar #1012128)
EPIC Senior Counsel

*/s/ T. John Tran*
T. JOHN TRAN (DC Bar #1027767)
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
202-483-1140
tran@epic.org
*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:15-cv-01955-TSC ) |
| UNITED STATES DEPARTMENT OF JUSTICE | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

This case arises out of EPIC's Freedom of Information Act ("FOIA") request to the Department of Justice ("DOJ") for the European Union-United States Umbrella Agreement. After the DOJ failed to make a determination or produce records responsive to the FOIA request, EPIC filed suit on November 4, 2015. After the DOJ then failed to file its answer by the deadline established by the Court, the Clerk of the Court entered default against the agency. EPIC subsequently moved for default judgment, and the Court ordered the DOJ to respond by January 25, 2016. On January 25th, the DOJ released the Umbrella Agreement to EPIC.

EPIC is eligible for and entitled to recover fees and costs in this matter, 5 U.S.C. § 552(a)(4)(E), and entered into negotiation with the DOJ regarding fees. Because the parties were unable to agree on a settlement, EPIC respectfully submits this motion for fees and costs. EPIC's attorneys have spent a total of 52 hours on this matter. Based on contemporaneously recorded billing records and applicable billing rates in this

1

jurisdiction, EPIC respectively requests an award of $21,408.15 in fees and $400 costs for work to obtain the Umbrella Agreement.

## FACTUAL BACKGROUND

In September 2015, the EU and US announced that they had reached a political agreement over a framework for transferring personal information in transatlantic criminal and terrorism investigations (the "Umbrella Agreement"). *See* Compl. ¶ 6, ECF No. 1. According to negotiators, the Umbrella Agreement was contingent on the passage of U.S. legislation giving certain non-U.S. citizens judicial redress under the Privacy Act of 1974. *Id*. ¶¶ 6, 8. Congress subsequently considered the Judicial Redress Act of 2015. Pub. L. 114-126, 130 Stat. 282. The Umbrella Agreement was the impetus for Congress's expeditious review of that bill, which impacts the rights of millions of individuals. The proposal was also widely discussed in the national and international media. *See, e.g.,* Sam Schechner and Valentina Pop, *Personal Data Gets Day in Court*, Wall St. J. (Mar. 24, 2015);[1] Duncan Robinson and Murad Ahmed, *US Tech Giants Face Fresh Fight with Europe Over Privacy*, Financial Times (Mar. 24, 2015);[2] Natasha Lomas, *EU-US Safe Harbor Data Flow Talks Still Sticking On Surveillance*, Tech Crunch (Jan. 19, 2016);[3] David J. Bender, *Advocacy Group Letter Opposes Privacy Shield*, Nat'l Law Rev. (Mar.

---

[1] http://www.wsj.com/articles/court-hears-challenge-to-safe-harbor-data-deal-1427206554.
[2] http://www.ft.com/cms/s/0/44c71248-d22c-11e4-ae91-00144feab7de.html#axzz44UNh4sjZ.
[3] http://techcrunch.com/2016/01/19/eu-us-safe-harbor-data-flow-talks-still-sticking-on-surveillance/.

18, 2016);[4] Stephen Dockery, *Compliance and Regulatory Heavy Lifting Ahead for Privacy Shield*, Wall St. J. (Mar. 10, 2016).[5]

Yet, until EPIC filed this lawsuit, no federal agency had made public the Umbrella Agreement to the public; citizens were therefore deprived of the opportunity to meaningfully participate in the legislative debate. Compl. ¶ 7.

On September 10, 2015, EPIC submitted a FOIA request to the DOJ ("EPIC's FOIA Request") for the Umbrella Agreement. *Id*. ¶ 20. EPIC sought "News Media" fee status, a waiver of duplication fees, and expedited processing. *Id.* ¶¶ 23–25. EPIC also submitted similar FOIA requests to the Department of Homeland Security ("DHS") and the Department of State. *Id.* ¶ 21. Both the DHS and the Department of State referred EPIC's requests to the DOJ's Criminal Division. *Id.* ¶¶ 26, 28. On

On October 8, 2015, the DOJ's Criminal Division denied EPIC's request for expedited processing, stating that the FOIA request presented "unusual circumstances," but did not address the substance of EPIC's FOIA Request. *Id*. ¶ 27.

On October 16, 2015, EPIC submitted an administrative appeal of the DOJ's denial of expedited processing. *Id*. ¶ 29. EPIC received no communication from the agency regarding the administrative appeal. *Id.* ¶ 30.

On November 4, 2015, after the DOJ failed to make a determination or produce responsive records, EPIC filed this lawsuit. *See* Compl. The Court instructed the DOJ to answer EPIC's complaint by December 16, 2016. Return of Service/Affidavit, ECF No. 11. But as of January 5, 2016, twenty days after the agency's deadline, the DOJ had not

---

[4] http://www.natlawreview.com/article/advocacy-group-letter-opposes-privacy-shield.
[5] http://blogs.wsj.com/riskandcompliance/2016/03/10/compliance-and-regulatory-heavy-lifting-ahead-for-privacy-shield/.

filed an answer and EPIC filed an affidavit for default. ECF No. 12. The Clerk entered a default against the DOJ the next day. Clerk's Entry of Default, ECF No. 13.

EPIC then moved for default judgment, ECF No. 14, and in turn, the Court ordered EPIC to "serve a copy of the default judgment motion on Defendant," ECF No. 15. The DOJ subsequently entered an appearance, ECF No. 16, and the Court ordered the agency to file a response to EPIC's motion "no later than 1/25/16," Min. Order (Jan. 8, 2016), and scheduled a hearing Status Conference for February 1, 2016. Min. Order (Jan. 20, 2016).

The DOJ submitted its first filing in the matter, requesting an extension of time to respond to EPIC's motion, on January 21, 2016. Def.'s Mot. for Extension of Time, ECF No. 17. EPIC filed a memorandum the next day opposing further delay. Pl.'s Opp'n, ECF No. 18. The Court denied the DOJ's request part, but gave the agency four additional days to file its response. Min. Order (Jan. 22, 2016). Then, on January 25th—the deadline for the agency's response to EPIC's motion—the DOJ released the Umbrella Agreement to EPIC in full. January 25, 2016 Response Letter, ECF No. 19-2.

After the DOJ released the Umbrella Agreement to EPIC, the parties moved to vacate the entry of default. Joint Mot. Vacate Entry of Default, ECF No. 19. In the motion, the parties advised the Court that the only remaining issue in dispute was attorney's fees and costs. *Id*. ¶ 5. The parties also advised the Court that they would attempt to reach a settlement on this issue. *Id.* ¶ 6. On February 26, 2016, the parties advised the Court that that they were unable to come to an agreement and proposed a briefing schedule to resolve the fee matter. Joint Status Report, ECF No. 20.

EPIC has incurred substantial costs in this litigation. Since EPIC filed this lawsuit, EPIC's attorneys have spent a total of 52 hours working on this matter. Tran Decl. ¶ 11. These hours are documented in the detailed and contemporaneous billing records prepared by EPIC's attorneys. *See* Aff. of Marc Rotenberg; Aff. of Alan Jay Butler; Aff. of T. John Tran; Aff. Aimee Thomson.

## ARGUMENT

EPIC is eligible for and entitled to recover fees it incurred to successfully obtain responsive records in this matter. The FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This attorney fee inquiry is divided into two prongs: eligibility and entitlement. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

Courts have consistently awarded fees and costs in FOIA cases in which EPIC has substantially prevailed. *See, e.g.*, *EPIC v. NSA*, 87 F. Supp. 3d 23 (D.D.C. 2015) (awarding EPIC $31,180 in fees and costs); *EPIC v. FBI*, 80 F. Supp. 3d 139 (D.D.C. 2015) (awarding EPIC $29,635 in fees and costs); *EPIC v. DHS*, 999 F. Supp. 2d 61 (D.D.C. 2013) (awarding EPIC $30,192 in fees and costs); *EPIC v. DHS*, 811 F. Supp. 2d 216 (D.D.C. 2011) (awarding EPIC $21,482 in fees and costs).

Because EPIC successfully obtained the relief sought in this matter—disclosure of the Umbrella Agreement—the Court should find that EPIC is both eligible and entitled to recover fees and costs and grant this motion. The Court should also award EPIC fees on fees for the costs it has incurred in the preparing this motion.

**I. EPIC is eligible for and entitled to fees in this matter.**

    **A. EPIC is eligible to recover fees because it obtained the Umbrella Agreement as a result of the suit.**

A FOIA plaintiff who has "substantially prevailed" is eligible to recover fees and costs. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011). The FOIA provides that a plaintiff "substantially prevails" by obtaining "relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." § 552(a)(4)(E)(ii).

EPIC's suit caused a "voluntary or unilateral change in position by the agency" sufficient to establish that EPIC substantially prevailed. *See Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 233 (D.D.C. 2012). A FOIA plaintiff substantially prevails when the "Defendant did not produce any documents until [after] Plaintiff filed his Complaint." *Poulsen v. DHS*, No. 13-CV-498, 2016 WL 1091060, at *3 (D.D.C. Mar. 21, 2016) (citing *EPIC v. FBI*, 72 F. Supp. 3d 338, 345 (D.D.C. 2014)). At the time EPIC submitted the FOIA request on September 10, 2015, the DOJ had not released the Umbrella Agreement. Compl. ¶¶ 18, 20. The DOJ also did not release the Umbrella Agreement in response to EPIC's FOIA request or EPIC's FOIA Appeal. *Id*. ¶ 30. It was not until after EPIC filed this suit and obtained a court order directing the DOJ to respond to the litigation that the agency released the Umbrella Agreement.

The DOJ also stated in its initial extension motion to EPIC's motion that the agency "identified a document" responsive to EPIC's FOIA request and was "evaluating the document under FOIA" but had not made "a determination as to whether or not it will be released" as of January 21, 2016. Def.'s Mot. for Extension of Time ¶ 6. The DOJ

subsequently produced the document to EPIC. Joint Mot. to Vacate Entry of Default ¶ 3, ECF No. 19. When a FOIA plaintiff's suit "substantially caused the government to release the requested documents before final judgment," the plaintiff has substantially prevailed and is eligible to recover fees. *Brayton*, 641 F.3d at 524–25.

### B. EPIC is entitled to recover fees and costs under the D.C. Circuit's four-factor test.

If a FOIA plaintiff is eligible to recover fees and costs, the court must then determine whether the plaintiff is entitled to those fees and costs. *Brayton*, 641 F.3d at 525. Courts in this Circuit employ a four-factor balancing test to determine a plaintiff's fee entitlement. *Morley v. CIA*, 810 F.3d 841, 842 (D.C. Cir. 2016). The four factors are: 1) "the benefit to the public, if any, deriving from the case"; 2) "the commercial benefit to the plaintiff"; 3) "the nature of the plaintiff's interest in the records"; and 4) "the reasonableness of the agency's withholding." *Id.* All four factors favor EPIC in this case, and the Court should accordingly award reasonable attorney's fees and costs.

The first factor "assesses the public benefit derived from the case." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). The public benefit analysis "requires an *ex ante* assessment of the potential public value of the information requested." *Morley*, 810 F.3d at 844. The public benefit factor weighs in the plaintiff's favor where the documents obtained "enables further research ultimately of great value and interest." *Davy*, 550 F.3d at 1162 n.3. "[T]he first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy*, 550 F.3d at 1160. The public benefit factor favors the plaintiff where the "requested document[t] was not previously available to the public" and provides "information bearing on" an issue of importance to the public. *Id.* at 1159.

7

The public benefit factor clearly favors of EPIC in this case. The collection and transfer of personal information between the U.S. and E.U. is a matter of significant public concern. *See, e.g.,* Sam Schechner and Valentina Pop, *Personal Data Gets Day in Court*, Wall St. J. (Mar. 24, 2015);[6] Duncan Robinson and Murad Ahmed, *US Tech Giants Face Fresh Fight with Europe Over Privacy*, Financial Times (Mar. 24, 2015);[7] Natasha Lomas, *EU-US Safe Harbor Data Flow Talks Still Sticking On Surveillance*, Tech Crunch (Jan. 19, 2016);[8] David J. Bender, *Advocacy Group Letter Opposes Privacy Shield*, Nat'l Law Rev. (Mar. 18, 2016);[9] Stephen Dockery, *Compliance and Regulatory Heavy Lifting Ahead for Privacy Shield*, Wall St. J. (Mar. 10, 2016).[10]

The Umbrella Agreement, successfully obtained by EPIC in this case, has contributed materially to that debate. *See* Mark L. Krotoski, The Judicial Redress Act of 2015 Becomes Law, Catherine Stupp, *Commission's 'Umbrella Agreement' With US Under Fire From MEPs*, EurActiv (Feb. 16, 2016);[11] *EU-US Data Protection Agreement Must Exclude Transfers of Sensitive Data in Bulk, Says Watchdog*, Out-Law.com (Feb. 16, 2016).[12]

---

[6] http://www.wsj.com/articles/court-hears-challenge-to-safe-harbor-data-deal-1427206554.
[7] http://www.ft.com/cms/s/0/44c71248-d22c-11e4-ae91-00144feab7de.html#axzz44UNh4sjZ.
[8] http://techcrunch.com/2016/01/19/eu-us-safe-harbor-data-flow-talks-still-sticking-on-surveillance/.
[9] http://www.natlawreview.com/article/advocacy-group-letter-opposes-privacy-shield.
[10] http://blogs.wsj.com/riskandcompliance/2016/03/10/compliance-and-regulatory-heavy-lifting-ahead-for-privacy-shield/.
[11] https://www.euractiv.com/section/digital/news/commissions-umbrella-agreement-with-us-under-fire-from-civil-liberties-meps/.
[12] http://www.out-law.com/en/articles/2016/february/eu-us-data-protection-agreement-must-exclude-transfers-of-sensitive-data-in-bulk-says-watchdog/.

The debate also coincides with a pivotal moment in U.S.-E.U. privacy relations. Compl. ¶¶ 15–17. On October 6, 2015, the Court of Justice of the E.U. held invalid the Safe Harbor Arrangement of 2000, which similarly enabled data transfers from the E.U. to the U.S. *Id*. ¶ 16. At the time EPIC filed the FOIA request, U.S. and E.U. officials were negotiating a replacement legal framework. *Id*. ¶¶ 16–17. That replacement framework, dubbed "the Privacy Shield," was agreed upon in January 2016. Andrea Peterson, *The Massive New Privacy Deal Between U.S. and Europe*, Explained, Wash. Post (Feb. 2, 2016).[13] The Umbrella Agreement plays a significant role in this larger debate about U.S. and EU privacy and data policies. Compl. ¶ 16.

The public benefit factor also weighs in favor of a FOIA plaintiff where dissemination of the information obtained is "likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (internal citations omitted). As a result of the EPIC lawsuit, the DOJ released an unredacted copy of the Umbrella Agreement, a previously secret document concerning transatlantic data transfers that is now subject to public scrutiny. EPIC sought the document in the public interest as a "quintessential requestor of government information envisioned by the FOIA." *EPIC v. DHS*, 982 F. Supp. 2d 56, 63 (D.D.C. 2013). Further, EPIC has distributed the Umbrella Agreement to the public. *See EPIC Prevails, DOJ Releases Secret EU-US Umbrella Agreement*, EPIC Alert (January 29, 2016) (hereinafter EPIC Alert Article).[14]

---

[13] https://www.washingtonpost.com/news/the-switch/wp/2016/02/02/the-massive-new-privacy-deal-between-u-s-and-europe-explained/.
[14] https://epic.org/alert/epic_alert_23.02.html. EPIC disseminated the Umbrella Agreement to epic.org visitors and the approximately 6,000 recipients of its bi-weekly newsletter. EPIC also maintains one of the world's most popular privacy websites:

The second and third entitlement factors also favor EPIC. The "nature of the [requester's] interest" factor is "closely related [to] and often considered together with the commercial benefit criterion." *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). "The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." *EPIC v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013). Favored interests are "scholarly, journalistic or public-interest oriented." *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was "wrong as a matter of law and an abuse of discretion").

EPIC is a 501(c)(3) non-profit public interest research center. *EPIC v. Dep't of Def.*, 241 F. Supp. 2d 5, 5 (D.D.C. 2003). EPIC derived no commercial benefit from the FOIA request or lawsuit. The sole benefit was to the public, which benefited from the disclosure of the documents released in this case. Thus, EPIC's interest in this matter is squarely within the "scholarly, journalistic or public interest oriented" interests favored by the statute. *See EPIC v. DHS,* 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (finding that "[EPIC's] aims, which include dissemination of information regarding privacy issues to the public . . . fall within the scholarly and public-interest oriented goals promoted by FOIA").

Lastly, the fourth entitlement factor favors EPIC. The question is "whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [Plaintiff] filed suit." *Davy*, 550 F.3d at 1163. Courts have weighed this factor in favor of the plaintiff when the agency failed to adequately explain the

---

epic.org. EPIC has published extensively about the Umbrella Agreement. *See* EPIC, *EPIC v. DOJ – Umbrella Agreement* (2016), https://epic.org/foia/eu-us-data-transfer/.

withholding. *See Negley v. FBI*, 818 F. Supp. 2d 69, 75 (D.D.C. 2011) (finding agency's failure to demonstrate it had a reasonable basis for refusing to release documents and conduct searches "'was exactly the kind of behavior the fee provision was enacted to combat'" (citing *Davy*, 550 F.3d at 1163)); *Pinson v. Lappin*, 806 F. Supp. 2d 230, 236 (D.D.C. 2011) (finding defendant's behavior unreasonable where "[o]nly after this litigation did the [agency] fulfill its obligation under the FOIA" by releasing information to plaintiff). Here, the DOJ did not have a "colorable or reasonable legal basis" to withhold the Umbrella Agreement. In fact, the agency never offered *any* basis for withholding the Umbrella Agreement or otherwise fulfilling its obligations under the FOIA. Thus, the fourth factor favors EPIC.

Because all four entitlement factors favor EPIC, and because EPIC substantially prevailed in this matter, the Court should grant EPIC's motion and award reasonable attorney's fees and costs in this matter.

## II. The Attorney's Fees EPIC Seeks Are Reasonable.

EPIC seeks an award of $21,408.15 in attorney's fees and $400 in costs in this matter, which is reasonable based on the hours worked and applicable billing rates.

To determine whether fees are reasonable, the court must consider (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable—i.e., did the attorneys waste or otherwise unnecessarily spend time on the matter. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) (quoting *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).

Attorney's fees are calculated based on the "lodestar," which is the number of

hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *Id*. A lawyer's hourly rate is measured by its fair market value, "regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The fee requester bears the burden of establishing the reasonableness of the hourly rates. *Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) (citing *Covington v. District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995)). Courts in this Circuit routinely employ the *Laffey* Matrix, a schedule of fees based on years of experience for lawyers who practice "complex federal litigation." *Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015); *see, e.g.*, *EPIC v. NSA*, 87 F. Supp. 3d 23 (D.D.C. 2015) (affirming a FOIA fee award calculated using the *Laffey* matrix).

Because the *Laffey* matrix was compiled more than thirty years ago, *see Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 1516 (D.C. Cir. 1984), *overruled in part on other grounds en banc by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C.Cir.1988), it must be periodically updated to account for inflation. *Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015). Courts have previously considered several different methods for adjusting the *Laffey* matrix. *Compare Thomas v. District of Columbia.*, 908 F. Supp. 2d 233 (D.D.C. 2012) (awarding fees based on USAO *Laffey* rates), *with Salazar v. District of Columbia*, 30 F. Supp. 3d 47 (D.D.C. 2014) (awarding fees based on LSI *Laffey* rates). More recently, the D.C. Circuit has concluded that the LSI-adjustment method is superior. *Salazar*, 809 F.3d at 64.

The D.C. Circuit recently determined that the rates generated by using the Legal Services Index ("LSI") of the Nationwide Consumer Price Index to update the *Laffey*

matrix (the "LSI *Laffey* Matrix") are reasonable for complex federal litigation. *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 64–65 (D.C. Cir. 2016). Courts in this District have recognized that the LSI *Laffey* Matrix provides a reasonable estimation of billing rates for litigation in FOIA and other complex federal litigation. *See*, *e.g.*, *CREW v. DOJ*, 80 F. Supp. 3d 1, 3 (D.D.C. 2015) ("[T]he Court is persuaded that the LSI-adjusted Laffey matrix, while imperfect, offers a better methodology for estimating prevailing market rates for complex federal litigation in Washington, D.C."); *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 15 (D.D.C. 2000) ("[T]he [LSI-updated] *Laffey* matrix more accurately reflects the prevailing rates for legal services in the D.C. community."), *aff'd by* 809 F.3d 58 (D.C. Cir. 2015). *But see Poulsen v. DHS*, No. 13-498, 2016 WL 1091060, at *6 (D.D.C. Mar. 21, 2016) (declining to apply the LSI *Laffey* matrix in a case that did not address the D.C. Circuit's *Salazar* decision).

The LSI *Laffey* Matrix is "more likely to reflect the rate of change in prevailing legal services" than the USAO Laffey Matrix, it "more accurately reflects the conditions of competition for complex litigation," and it utilizes a more recent survey of rates as compared to the DOJ's version. Pl.'s Mot. Summ. J., Ex. E., Decl. Michael Kavanaugh at 7–10, *CREW v. DOJ*, 80 F. Supp. 3d 1 (D.D.C. 2015) ("CREW"). *See also* Tran Decl. ¶ 6. EPIC has accordingly used the LSI *Laffey* Rates to calculate the lodestar amount in this case. Tran Decl. ¶ 6.

The D.C. Circuit has held that "the second prong of the equation for calculating a fee award—the reasonableness of hourly rates awarded under fee-shifting statutes— consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'"

*Am. Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148 (D.D.C. 2007) (*citing Covington v. District Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). To recover, the movant must provide "contemporaneous, complete, and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

EPIC has provided complete, detailed billing records, Pl.'s Detailed Billing Records, Ex. G, which were contemporaneously recorded and accurately reflect the work done by each attorney. *See* Tran Decl. ¶ 8. The records reflect the date, time, and nature of each activity, and include details about the specific task performed. Ex. G. Each entry is clearly labeled with the name of the attorney performing the work, the attorney's rate, the hours of work performed on the activity, and the total amount charged for the activity. *Id*. EPIC has therefore provided satisfactory billing records in this matter.

EPIC's request is further supported by affidavits from each attorney who worked on this case during the past four years. Aff. of Marc Rotenberg; Aff. of Alan Jay Butler; Aff. of T. John Tran; Aff. Aimee Thomson. EPIC's request for $400 in costs for filing in the District Court is supported by the case docket in which the clerk of the Court assigned receipt number 0090-4305312.

Based on the 52 hours worked by EPIC's attorneys on this matter and the applicable LSI *Laffey* rates, the total lodestar amount for all work on this matter is $22,534.90. *See* Tran Decl. ¶ 12. EPIC has further reduced this lodestar amount based on reasonable billing judgment. *Id*. ¶ 10. EPIC accordingly requests a reasonable award of $21,408.15 for attorney's fees and $400 in costs in this matter.

**III. The Court should award EPIC "fees-on-fees."**

EPIC is also entitled to recover fees for its work to obtain fees in this matter. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 240 (D.D.C. 2012) (citations omitted); *see also EPIC v. DHS,* 811 F. Supp. 2d 216, 237 (D.D.C. 2011) ("It is a common practice in this jurisdiction to award fees on fees in FOIA cases."). EPIC's attorneys dedicated 17.8 hours to obtaining fees in this matter. Tran Decl. ¶ 11. The Court should grant EPIC's motion and award fees-on-fees.

## CONCLUSION

EPIC has substantially prevailed in this case and is eligible for and entitled to recover fees under the FOIA. The award EPIC seeks is reasonable and supported by the attached declaration, affidavits, and billing records. EPIC therefore requests that the Court award it $21,408.15 in fees and $400 in costs.

Respectfully submitted,

MARC ROTENBERG (DC Bar # 422825)
EPIC Executive Director

ALAN BUTLER (DC Bar #1012128)
EPIC Senior Counsel

*/s/ T. John Tran*
T. JOHN TRAN (DC Bar #1027767)
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
202-483-1140
tran@epic.org
*Counsel for Plaintiff*

Dated: April 4, 2016